406    APPELLATE COURTS OF ILLINOIS.

Cabiness v. Texas Tie & Lumber Preserving Co., 152 Ill. App. 406.

## F. M. Cabiness, Plaintiff in Error, v. Texas Tie & Lumber Preserving Company, Defendant in Error.

### Gen. No. 14,876.

AGENT—*burden of proof to establish authority.* The burden is upon the party relying upon an agent's authority as a basis for recovery, to establish such authority by competent evidence of a certain and specific character.

Bill in chancery. Error to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed January 24, 1910.

GEORGE E. WISSLER and CHARLES C. SPENCER, for plaintiff in error.

SCOTT, BANCROFT & STEPHENS, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Complainant filed a bill in the Superior Court to correct a mistake alleged to have been made by the typewriter or scrivener who prepared the draft of a contract between him and defendant, represented and signing by its agent, W. C. Stapp (complainant being the scrivener and typewriter), in which the word "commission" and the words "of five per cent (5%) on the net price of $13,000" were omitted, but which were mutually intended by the parties. The contract purports to give complainant the right as agent to sell the mill plant of defendant formerly owned by the bankrupt firm of Stapp & Parish and located at Stapp's Switch, Texas. The bill prayed not only for the reforming of the contract, but that defendant be decreed to pay to complainant the sum due him as commissions for the sale of the mill plant according to the terms of the contract when reformed. On hearing the chancel-

lor dismissed the bill for want of equity, at complainant's cost.

Complainant contends that the record discloses a conspiracy to cheat him out of the commissions earned by him in finding a customer for the mill plant who was not only able and willing to purchase the property, but in fact did so, and paid for it the price agreed. A careful scrutiny of the evidence, giving to it all the weight and credence to which it is entitled, with all legitimate inferences from every part of it possible to indulge in complainant's favor, utterly fails to sustain such charge of conspiracy.

The one crucial and decisive question to be disposed of is, was Stapp, the agent of defendant, authorized to execute the contract on its behalf for the sale of the mill plant upon which complainant bases his claim, or, if executed by Stapp without authority, did defendant subsequently ratify such unauthorized act so as to make the same binding upon it. It is our opinion that the evidence fails to prove that Stapp had any authority to execute the contract for defendant, or that defendant in any manner subsequently, by its actions or conduct, did anything from which it can be gathered that it knew of the existence of the contract and ratified it.

We will cite a few of the controlling facts which appear from the record.

Stapp had been a member of the firm of Stapp & Parish, which owned and operated the mill plant. The firm went into bankruptcy and the mill property into the jurisdiction of the bankruptcy court as an asset of the bankrupt firm. Defendant acquired the mill plant through the bankruptcy proceedings. These facts were all known to complainant. Stapp was, at the time of making the contract in litigation, foreman of the mill plant and continued to operate the same for defendant until its sale. Complainant was a real estate broker at Conroe, ten miles from the mill plant. J. S. Baker was the general manager of defendant.

408    APPELLATE COURTS OF ILLINOIS.

Cabiness v. Texas Tie & Lumber Preserving Co., 152 Ill. App. 406.

Stapp in making the contract with complainant did so without authority from defendant or its general manager, Baker. In fact Stapp testifies that he told complainant that if he made a sale Baker would have to approve of it for defendant, otherwise it would not be a sale. There is no evidence tending to bring home to defendant or Baker or any of defendant's officers either knowledge of the dealings of Stapp with complainant or of the subsequent doings of complainant in attempting to negotiate a sale of the mill plant. Stapp testified that he was not authorized to make any agreement for a sale by defendant or any of its officers, and that what he in fact did with complainant was not communicated to Baker, defendant, or any of its officers. The mill plant was about June 2, 1902, sold to the Darlington Miller Lumber Company by defendant through Baker, its general manager. The contract which complainant seeks to have performed gave him fifteen days to sell the mill, the date of that contract being May 15, 1902, so that the time limit expired May 30, 1902. Prior to that time complainant had some negotiations with Mr. Miller of the Darlington Miller Lumber Company, to whom he represented that the mill plant was owned by Stapp. Miller visited and inspected the mill at the request of complainant, who offered it to him at the price of $18,000. On May 12, 1902, Miller wrote complainant offering $12,000 for the "Stapp saw mill property" and $8 per thousand feet for the lumber on hand. This offer complainant showed to Stapp and requested that a former pencil memorandum be reduced to a contract, which eventuated in the contract now sought to be reformed, of date May 15, 1902, being made. At this time complainant told Stapp not to mention the matter to defendant's manager, Baker, and he complied with that request. Miller received a letter from complainant concerning his offer May 31, 1902, and having learned that Stapp did not own the mill, but that defendant did, got into telephonic communication with Baker

June 2, 1902, and after a meeting of Baker and Miller at Cleveland, Texas, the sale was agreed upon at the price of $12,000. Baker knew nothing whatever concerning the negotiations between complainant and Miller until after Baker agreed upon the terms of the sale with Miller and sold the property to the Darlington Miller Lumber Company. Disregarding all other questions, it is clear that no contractual relationship at any time existed between the parties to this suit in relation to the sale of the Stapp Switch mill plant, and this being the case it is immaterial what dealings or negotiations complainant had with Miller or any one else which may have contributed ultimately to the consummation of the sale finally made. At the most, complainant relied upon Stapp's authority, which rested, if at all, in parol, and was deceived or misled by Stapp, although we do not think that the evidence so proves. To entitle complainant to recover, it devolved upon him to establish the agency of Stapp by competent evidence of a certain and specific character. Proudfoot v. Wightman, 78 Ill. 554. Such quality of proof does not appear in this record.

The decree dismissing the bill for want of equity being without error is affirmed.

*Affirmed.*